# DISTRICT OF COLUMBIA *v.* HAUF.

APPEAL AND ERROR; JEOPARDY; MUNICIPAL CORPORATIONS; STATUTES;
WEIGHTS AND MEASURES.

1. While this court has no jurisdiction to entertain an appeal by the
   United States, or to grant a writ of error applied for by the District
   of Columbia, to review a judgment of acquittal, after a trial on the
   merits, in a criminal case (following *United States* v. *Evans*, 30 App.
   D. C. 58, 213 U. S. 297, 53 L. ed. —, 29 Sup. Ct. Rep. 507, and *Dis-
   trict of Columbia* v. *Burns*, 32 App. D. C. 203), it has jurisdiction
   to grant and to entertain a writ of error to the police court, on ap-
   plication of the District of Columbia, in a prosecution for the viola-
   tion of a municipal ordinance, where that court quashed the infor-
   mation and discharged the accused on the ground of the invalidity
   of the ordinance, as the accused has not been put in jeopardy.
2. The ordinance of the late corporation of Washington of January 7,
   1858, prescribing the ingredients and fixing the weight of loaves of
   bread to be sold within the limits of the then city of Washington is
   inconsistent with, and was therefore repealed by, the act of Congress
   of February 21, 1871 (16 Stat. at L. 419, chap. 62), repealing the
   charters of the cities of Washington and Georgetown, and creating
   a new form of municipal government for the District of Columbia.

No. 1966.   Submitted March 3, 1909.   Decided April 6, 1909.

IN ERROR to the Police Court of the District of Columbia.
*Judgment Affirmed.*

The COURT in the opinion stated the facts as follows:

This case is before us on a writ of error granted to review a
judgment of the police court.

George Hauf was charged by information filed in the police
court with offering to sell, in the city of Washington, on August

31, 1908, loaves of wheaten bread which weighed less than 16 ounces each, in violation of an ordinance of the late mayor, board of alderman, and board of common council of the late corporation of Washington, approved January 7, 1858.

The defendant moved to quash the information upon several grounds, among which are: The ordinance is unconstitutional and void; the charter of the late corporation of Washington conferred no authority to enact such an ordinance; it is unreasonable, uncertain, and meaningless.

A certified copy of the ordinance as contained in the minutes of the late corporation of Washington, now in the custody of the District government, reads as follows:

"Be it enacted by the board of aldermen and board of common council, of the city of Washington, That from and after the 15th day of January, 1858, it shall not be lawful for any person or persons to sell or offer for sale within the city of Washington any loaf bread manufactured of wheaten flour, whether that known as baker's wheaten flour or any other (except bread made of unbolted wheaten flour, or bran bread, hereinafter provided for), unless the same shall be composed of the best quality of pure, sweet, superfine wheaten flour, free from all adulterating ingredients and from any improper or unwholesome mixture whatever.

"Section 2. And be it enacted, That the loaves of wheaten bread sold in this city shall be of three distinctive sizes, or weights, to wit: The first to weigh not less than 16 nor more than 18 ounces avoirdupois; the second, to weigh not less than 32, nor more than 35 ounces avoirdupois; and the third to weigh not less than 64 nor more than 68 ounces avoirdupois weight; and each loaf of bread shall have legibly stamped or impressed thereon the weight of the bread in figures one, two, and four. The figure one to be stamped on the loaf of bread of the first weight, the figure two on the second weight, and the figure four on the third weight.

"Section 3. And be it enacted, That loaves of bread made of rye flour and of bread made of unbolted wheaten flour, or bran bread, shall, when offered for sale, be of the same distinctive

sizes or weights as are prescribed for loaves of wheaten bread, and shall also be free from any adulterating or unwholesome ingredient whatever.

"Section 4. And be it enacted, That any person or persons offering to sell bread in loaves different in weight or quality from those prescribed in this act shall forfeit the same, and shall pay a penalty of $2 for every loaf so offered for sale and for every loaf actually sold; the information to be lodged with a police magistrate within twenty-four hours from the time the bread is so offered for sale or sold: one half of said penalty to be given to the informer: provided, however, that, in rendering his decision, the magistrate shall be bound to make a reasonable allowance for the staleness of the bread or loss of weight by drying.

"Section 5. And be it enacted, That it shall be the duty of the several clerks of markets in this city to inspect all bread offered for sale in their respective markets; to weigh it when they think proper, and to seize the same when varying from the weight and quality prescribed by this act; and, on proof before a magistrate, all bread offered for sale contrary to the provisions of this act shall be forfeited and sent to the almshouse for the use of the poor, except when its use will be pernicious to health; in which case it shall be destroyed.

"Section 6. And be it enacted, That it shall be the duty of each and all of the police officers, whenever they shall deem it necessary, to enter the bake houses, stores, and shops in which bread is sold in their respective wards, and also to overhaul the carts and other vehicles employed in carrying bread around to houses, and to examine and weigh the bread found therein; and, if such bread or any part thereof shall not be made in conformity with the directions of this law, said police officers or either of them shall proceed against the person or persons so offending, agreeably to law.

"Section 7. And be it enacted, That if any baker or vender of bread, by himself or herself, or by his or her agent, shall refuse to permit the bread in his or her possession to be examined and weighed, at a reasonable hour, by any police officer or clerk of

market, or shall conceal the same from the police officer or clerk who desires to examine or weigh the same, he or she shall forfeit and pay not less than $20 nor more than $30 for every day's refusal.

"Section 8. And be it enacted, That all bread, buns, rolls, crackers, biscuit, cake, or baked dough, not hereinbefore described or provided for, shall, when sold, be sold by actual weight in avoirdupois pounds and ounces, such weight to be in     by the vender at the time of sale, by means of scales approved by the sealer of weights and measures; and any person or persons who shall neglect or refuse to weigh in the manner prescribed such bread, buns, rolls, crackers, biscuit, cake, or baked dough, not provided for in the previous sections of this act, and to declare truly the weight of the same, shall, upon proof before a police magistrate of thus offending, forfeit and pay for every such offense a fine of not less than $2 nor more than $5; one half to go to the informer and the other half to the city funds; Provided, however, that the process of weighing shall not be obligatory when the purchaser or his or her agent shall volunteer to dispense with the same.

"Section 9. And be it enacted, That all acts and parts of acts inconsistent with this act be and the same are hereby repealed."

The motion to quash was sustained and the defendant discharged. From that order the writ of error was granted on the application of the District of Columbia.

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Andrew B. Duvall,* assistant, for the plaintiff in error.

*Mr. Alexander H. Bell* for the defendant in error.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. The first question to be considered is the jurisdiction of this court to review the order quashing the information. We

have heretofore held that this court has no power to entertain an appeal by the United States from a judgment of the supreme court of the District, declaring a defendant not guilty of the offense charged against him, for the purpose of reviewing alleged errors committed in the trial, without affecting the finality of the judgment. *United States* v. *Evans,* 30 App. D. C. 58. And the same ruling has been made to apply to a writ of error to the police court under the same conditions. *District of Columbia* v. *Burns,* 32 App. D. C. 203. But those decisions do not govern this case, because there has been no trial on the merits,—no adjudication of not guilty. The police court refused to proceed to trial, because it held the ordinance invalid. The defendant has not been put in jeopardy, and may, therefore, be rearrested and brought to trial upon the charge in case the judgment quashing the information be reversed. Code, Sec. 935 [31 Stat. at L. 1341, chap. 854]; *United States* v. *Evans,* 28 App. D. C. 264; 30 App. D. C. 58, 61.

2. The next question is whether the ordinance of the late corporation of the city of Washington, hereinbefore recited, is still in force.

At the time of the enacting of said ordinance there were three separate forms of municipal government in the District of Columbia. These were the corporation of the city of Washington, the corporation of the city of Georgetown, and the levy court. The charters of the two cities controlled in the territories comprised within the designated limits of said cities respectively. The jurisdiction of the levy court extended to all the territory of the District not included in the limits of said cities.

By act of Congress, approved February 21, 1871, the charters of the two cities were repealed, and the levy court abolished. A new form of municipal government was created for the entire District. 16 Stat. at L. 419, chap. 62. Section 40 of said act, in repealing the city charters, provided that the portion of the District included within the limits of each shall continue to be known as the city of Washington and the city of Georgetown, respectively; and further as follows: "But all laws and ordi-

nances of said cities, respectively, and of said levy court, not in-
consistent with this act, shall remain in full force until modified
or repealed by Congress or the legislative assembly of said Dis-
trict." Evidently, this saving clause was not intended to ex-
tend the operation of any unrepealed ordinance beyond the
limits of the municipal government by which it had been
enacted. In many instances the several corporations had
promulgated ordinances and regulations relating to the same
general subject-matter, but differing in their provisions. For
example, the city of Georgetown had an ordinance, adopted in
1806, and amended in 1808, regulating the sizes of loaves of
baker's bread, the labeling of the same to denote inspection,
and the prices to be charged therefor. The bread ordinance of
the city of Washington has never been modified or repealed by
subsequent acts of Congress or of the legislative assembly of
the new government, and the question is, Was it repealed by the
act of February 21, 1871, because inconsistent therewith?

As the cities of Washington and Georgetown had grown con-
siderably since their original acts of incorporation, and the
District generally was increasing in population, public policy
suggested a new form of municipal government that would
comprehend the entire District, and bring all of its inhabitants
under one power of control and regulation for all purposes.
Evidently, one of the main objects of the new legislation was to
subject the inhabitants of the entire District to the equal opera-
tion and protection of all police regulations, general in their
nature, and affecting the interests of all in a like manner. If all
such general regulations of the several preceding municipal gov-
ernments, not expressly repealed by the organic act of February
21, 1878, or by some subsequent authoritative act, are to be
held to be still in force, the people would, in some instances, be
subjected to two or three conflicting regulations of the same
thing, determinable by the particular part of the District in
which an act affected thereby may have been done. Another
consequence of holding this ordinance to be still in force with-
in the limits of the old city of Washington would be that a
baker within those limits would not be able to sell the prohibited

loaves of bread to anyone, while one just over the boundary line, but within the limits of the modern city, could sell the same with impunity.

Thus, the effect of the enforcement of the ordinance might be to injure the business of the baker in the old city, or compel him to remove beyond the boundary, without, at the same time, accomplishing the purpose of its enactment. In view of these conditions, we are of the opinion that the ordinance is inconsistent with the act of February 21, 1871, and was therefore repealed by it.

Having been repealed, it could not be revived by the act of February 11, 1895 (28 Stat. at L. 650, chap. 79), adding Georgetown to the city of Washington, and extending all general laws, ordinances, and regulations of the latter territory to the former.

It is unnecessary to consider the other objections that have been made to the validity of the ordinance. For the reasons given, the order quashing the information will be affirmed, with costs. *Affirmed.*